NOT FOR PUBLICATION                    [Dkt. Ents. 48, 49, 52]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| JASON CORDIAL,<br><br>    Plaintiff,<br><br>v.<br><br>ATLANTIC CITY, et al.,<br><br>    Defendants. | Civil No. 1:11-cv-01457 (RMB/AMD)<br><br>**OPINION** |

Appearances

Thomas J. Mellon
86 Court Street
Freehold, NJ 07728
     Attorney for Plaintiff Jason Cordial

Michael E. Riley
Law Offices of Riley & Riley
The Washington House
100 High Street, Suite 302
Mount Holly, NJ 08060
     Attorney for Defendants Atlantic City, Franco Sydnor, &
     Michelle Clark

Patrick J. Wolf & Sharleen E. Pratt
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 19103
     Attorneys for Defendant John J. Mooney III

Cristopher C. Mauro
Camacho Mauro Mulholland, LLP
20 Nassau Street, Suite 308
Princeton, NJ 08542
     Attorney for Defendants Harrah's Atlantic City Propco, LLC,
     d/b/a Harrah's Resort Atlantic City & Kolongi Watford

**Bumb**, UNITED STATES DISTRICT JUDGE:

1

This action arises out of a March 29, 2009 incident in which Plaintiff Jason Cordial ("Plaintiff") was forcibly removed from Harrah's Hotel and Casino ("Harrah's") in Atlantic City and arrested by Atlantic City Police Officers Franco Sydnor ("Sydnor") and Michelle Clark ("Clark"). Plaintiff brings claims against the City of Atlantic City ("Atlantic City"), Atlantic City Police Department Chief of Police John J. Mooney ("Mooney"), Officers Sydnor and Clark, Harrah's, Security Officer Kolongi Watford ("Watford") (collectively, "Defendants"), and numerous other named and fictitious individuals or entities.[1]

Before the Court are three motions for summary judgment filed by 1) Defendants Atlantic City, Sydnor, and Clark; 2) Defendant Mooney; and 3) Defendants Harrah's and Watford. For the reasons that follow, these motions for summary judgment will be granted in part and denied in part.

I.   **FACTUAL BACKGROUND**

The following facts are taken from the Rule 56.1 Statements submitted by Plaintiff and Defendants. Although the parties present similar descriptions of the events leading to this litigation, where their accounts differ, the Court adopts

---

[1] The Complaint names several other Harrah's employees: Marcus Corbit, Eric Crewe, Shaun Paisley, Rivera, Greg Reichenbach, and Cahill. (Compl. at 1.) The docket reflects no evidence that these individuals were served with the Complaint and none of them have appeared in this action.

2

Plaintiff's version of events for purposes of deciding these motions.[2]

On March 29, 2009, Plaintiff was attending a friend's bachelor party at Harrah's. (Mooney's Statement of Undisputed Material Facts ("Mooney's SUMF"), Dkt. Ent. 49, ¶¶ 2-3; Plaintiff's Response to Mooney's Statement of Facts ("Pl.'s Res. Mooney"), Dkt. Ent. 54, ¶¶ 2-3.) At approximately 1:00 or 2:00 a.m., one of Plaintiff's friends became involved in an altercation with another patron while at "the Pool" Nightclub, and the other members of Plaintiff's party intervened. (Mooney's SUMF ¶ 8; Pl.'s Resp. Mooney ¶ 8.) Security approached and asked Plaintiff's party to leave. (Mooney's SUMF ¶ 9; Pl.'s Resp. Mooney ¶ 9.) Plaintiff and two of his friends then became involved in a second confrontation, in the Waterfront Hallway, with another unidentified patron, who threw some type of liquid at Plaintiff. (Mooney's SUMF ¶ 10; Pl.'s Resp. Mooney ¶ 10.) Harrah's security personnel Watford, Corbit, and Paisley responded to this second incident and began to escort Plaintiff's friend, Scott Rayburg ("Rayburg"), through the hallway. (Harrah's Statement of Undisputed Material Facts ("Harrah's SUMF"), Dkt. Ent. 52, ¶¶ 8-9; Plaintiff's Response to

---

[2] Where there are significant factual disputes between the parties, the facts should be construed in favor of the non-moving party. See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004), cert. denied, 543 U.S. 956 (2004).

Harrah's Statement of Facts ("Pl.'s Resp. Harrah's"), Dkt. Ent. 64, ¶¶ 8-9.) Plaintiff claims that he attempted to assist Rayburg, who suffers gait instability due to his prior back surgery. (Pl.'s Resp. Harrah's ¶¶ 5-6.) Rayburg, however, lost his balance and fell into a female passerby, knocking her to the ground. (Pl.'s Resp. Harrah's ¶ 8.) In the resulting fuss, Corbit, Watford, and Paisley grabbed Plaintiff in an attempt to physically restrain him, and took him to the ground. (Harrah's SUMF ¶ 8; Pl.'s Resp. Harrah's ¶¶ 11-13.)

Plaintiff and Rayburg were then escorted to a holding cell located on Harrah's property. (Harrah's SUMF ¶ 9; Pl.'s Resp. Harrah's ¶ 14.) Shortly thereafter, Officers Sydnor and Clark arrived at the holding cell. (Atlantic City's Statement of Undisputed Material Facts ("AC's SUMF"), Dkt. Ent. 48, ¶ 12; Plaintiff's Response to Atlantic City's Statement of Facts ("Pl.'s Resp. AC"), Dkt. Ent. 54, ¶ 12.) At that point, Plaintiff began using and directing foul language at the officers. (AC's SUMF ¶ 13; Pl.'s Resp. AC ¶ 13.) Plaintiff claims that, while he was in the holding cell, Harrah's security personnel and Officers Sydnor and Clark assaulted him, which Defendants dispute. (Pl.'s Resp. AC ¶ 16.)

Upon Harrah's request, Sydnor and Clark escorted Plaintiff, un-handcuffed, through the lobby and out the front doors, where they attempted to place him in a taxicab. (AC's SUMF ¶ 14; Pl.'s

Resp. AC ¶ 14.) Defendants allege that Plaintiff was becoming increasingly agitated and verbally abusive towards the officers as he was escorted out of the casino. (AC's SUMF ¶ 15.) Once outside, Plaintiff claims to have told the officers that he did not want to enter the cab and had no money to pay for the fare. (AC's SUMF ¶ 16; Pl.'s Resp. AC ¶ 16.) Throughout this time Plaintiff continued to curse at the officers, was verbally abusive and combative towards them, and allegedly verbally threatened the officers with physical harm. (AC's SUMF ¶ 16; Mooney's SUMF ¶ 17; Pl.'s Resp. Mooney ¶ 17.) An altercation involving Plaintiff, Sydnor, and Clark followed, which led to Plaintiff being arrested and ultimately charged with terroristic threats, aggravated assault on a police officer, resisting arrest, and disorderly conduct. (Mooney's SUMF ¶ 18; Pl.'s Resp. Mooney ¶ 18.)[3] Plaintiff alleges that during this altercation Defendants Sydnor and Clark, as well as Harrah's security officers, assaulted him without justification and with excessive force causing him to suffer injuries. (Pl.'s Resp. Harrah's ¶ 1.)

In this action, Plaintiff brings claims under § 1983 against Sydnor and Clark, as well as John Does 1-5, for excessive force (Count One), failure to intervene in the

---

[3] Plaintiff's charges were dismissed through his participation in New Jersey's Pre Trial Intervention ("PTI") Program. (AC's SUMF ¶ 19; Pl.'s Resp. AC ¶ 19.)

unjustified assault and arrest of Plaintiff (Count Two), and malicious abuse of process (Count Three). Plaintiff asserts § 1983 claims against John Does 2, and 6-10 for supervisory liability (Count Four), and against Atlantic City, Chief Mooney, and John Does 6-10 for constitutional deprivations due to unlawful customs, practices, or policies and inadequate training (Count Five). The Complaint separately asserts a claim for prospective injunctive relief against Atlantic City, Mooney, Sydnor, Clark, and John Does 1-10 (Count Six). In addition, Plaintiff asserts several state law claims: assault and battery (Count Seven) and negligent or intentional infliction of emotional distress (Count Eight) against Corbit, Crewe, Paisley, Rivera, Watford, Reichenbach, Cahill, Sydnor, Clark, and John Does 1-20; as well as negligent hiring, training and supervision (Count Nine) and agency (Count Ten) against Corbit, Crewe, Paisley, Rivera, Watford, Reichenbach, Cahill, John Does 11-25, Harrah's, and ABC Corporations 1-10.

## II. __LEGAL STANDARD__

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is

"genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.  When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.

7

56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatte v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

## III.   **CLAIMS AGAINST FICTITIOUS PARTIES**

As an initial matter, Plaintiff has brought numerous causes of action against several John Does, who are purportedly employees of Atlantic City or Harrah's, as well as several ABC Corporations that are allegedly agents, servants and/or employees of Harrah's. Although "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified," these parties must be dismissed if such discovery does not reveal their proper identities. See Blakeslee v. Clinton Cnty., 336 F. App'x 248, 250 (3d Cir. 2009) (affirming district court's sua sponte dismissal of fictitious parties that were not identified after

8

discovery) (citing <u>Klingler v. Yamaha Motor Corp., U.S.A.</u>, 738 F. Supp. 898, 910 (E.D. Pa. 1990)); <u>Scheetz v. Morning Call, Inc.</u>, 130 F.R.D. 34, 37 (E.D. Pa 1990) (dismissing Doe defendants after discovery yielded no identities). This may be done upon motion of a party or the Court. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). Here, Plaintiff has failed to amend the Complaint or otherwise identify any of these fictitious defendants despite the fact that discovery has now closed. Nor does he contest that dismissal of these unnamed parties is appropriate. (<u>See</u> Plaintiff's Brief in Opposition to Atlantic City ("Pl.'s Br. Opp. AC"), Dkt. Ent. 54, at 1.) Accordingly, these parties shall be dismissed.

## IV.   CLAIMS AGAINST ATLANTIC CITY, SYDNOR AND CLARK

Atlantic City and Officers Sydnor and Clark seek summary judgment on Plaintiff's § 1983 claims for municipal liability, as well as the state law claims for malicious abuse of process, assault and battery, and negligent or intentional infliction of emotional distress.[4] Plaintiff concedes that summary judgment as to the state claims is appropriate (<u>see</u> Pl.'s Br. Opp. AC at 1), and therefore Defendants' motion is granted as to these claims.

---

[4] These Defendants also moved with respect to Count Four against the unnamed supervisory employees, which is dismissed in accordance with the above. Defendants Sydnor and Clark do not move for summary judgment on the excessive force and failure to intervene claims (Counts One and Two).

With respect to the municipal liability claims, Defendants argue that Plaintiff cannot demonstrate the existence of an unconstitutional policy or custom, or that any such policy or custom proximately caused Plaintiff's injury. Atlantic City further argues that Plaintiff has not produced any evidence of any training deficiencies or that the City had knowledge that officer training was inadequate.

1. Municipal Liability

Plaintiff seeks to hold Atlantic City liable under § 1983 pursuant to Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978). Specifically, Plaintiff argues that Atlantic City maintained an unlawful custom, practice, or policy of tolerating its officers' use of excessive force and failed to adequately train its officers. It is axiomatic that a municipal entity cannot be held liable under § 1983 on a theory of respondeat superior solely because it employs a tortfeasor. Katzenmoyer v. Camden Police Dep't, No. 08-1995, 2012 WL 6691746, at *3 (D.N.J. Dec. 21, 2012) (citing Monell, 436 U.S. at 691). Rather, municipalities may only be held liable for injuries inflicted pursuant to a government policy or custom. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Policy is made when a decisionmaker with final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. Andrews v. City of Phila., 895

F.2d 1469, 1480 (3d Cir. 1990). A course of conduct or practice is considered custom when, though not authorized by law, such practices are "so permanent and well-settled as to virtually constitute law." Id. Custom can also be established through evidence of knowledge and acquiescence. Groark v. Timek, No. 12-1984, 2013 WL 6199187, at *17 (D.N.J. Nov. 27, 2013).

To impose municipal liability pursuant to a custom, a plaintiff must show that the municipal action was taken with deliberate indifference to its known or obvious consequences. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 398 (1997). This can be shown if it is obvious that a custom would lead to constitutional violations. Berg v. Cnty. of Allegheny, 219 F.3d 261, 277 (3d Cir. 2000). A pattern or continued adherence to an action that the municipality knows or should know has failed to prevent tortious conduct by its police officers can establish the requisite conscious disregard for the consequences of its actions such that a municipality may be held liable. Groark, 2013 WL 6199187, at *6 (citing Brown, 520 U.S. at 407).

Plaintiff alleges that Atlantic City should be held liable due to its custom of acquiescing in its officers' use of excessive force as demonstrated by its failure to conduct adequate Internal Affairs ("IA") investigations into excessive force complaints against police officers. This is a recognized

11

theory of municipal liability. See Beck, 89 F.3d 966. In Beck, the plaintiff offered evidence that the officer in question had five prior complaints filed against him within five years, all of which alleged similar misconduct by the officer. Id. at 973. The plaintiff also presented annual reports showing a high rate of excessive force complaints throughout the police department and produced evidence that the internal investigation process was shallow and flawed. Id. at 973-74. The Third Circuit determined that the plaintiff had presented sufficient evidence to permit a jury to infer that the City "knew about and acquiesced in a custom tolerating the tacit use of excessive force by its police officers." Id. at 976.

Similarly, Plaintiff here has presented sufficient evidence to demonstrate genuine issues of material fact regarding whether Atlantic City has a custom of acquiescing in the use of excessive force by its officers. Specifically, Plaintiff presented evidence that from 2005 to 2009,[5] 426 excessive force complaints were lodged with IA, but only 4 were sustained. (Ex.

---

[5] Plaintiff also offers statistics for 2010, showing that only 1 of the 166 excessive force complaints was sustained. (Ex. H to Pl.'s Br. Opp.) While subsequent complaints or violations cannot be used to demonstrate knowledge of an unconstitutional policy at the time of plaintiff's incident, they are relevant to show a continuous pattern to support a finding of custom or policy. See Groark 2013 WL 6199187, at *17 (citing Beck, 89 F.3d at 972).

12

H to Pl.'s Br. Opp. AC.)[6] There were seven excessive force complaints against Sydnor and two against Clark during the same period. (Ex. L to Pl.'s Br. Opp. AC.)[7] The written complaints and subsequent IA investigation reports demonstrate that many of the complaints are similar in nature to the instant matter in that the complainants allege being grabbed by Sydnor, thrown or taken to the ground, and then assaulted or punched while on the ground.[8] (Ex. M to Pl.'s Br. Opp. AC); cf. Troso v. Atlantic City, No. 10-1566, 2013 WL 6070028, at *1 (D.N.J. Nov. 15, 2013) (granting motion in limine barring the use of IA reports because Plaintiff did not offer "the additional evidence needed to properly bolster or contextualize the [IA] Summary Reports and Summaries of the Use of Force Reports" and provided "no

---

[6] The court notes that statistical evidence alone, "isolated and without further context," generally "may not justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." Katzenmoyer, 2012 WL 6691746, at *4 (quoting Merman v. City of Camden, 824 F. Supp. 2d 581, 591 (D.N.J. 2010)). However, a showing that the officer whom a plaintiff accuses of using excessive force has been the subject of multiple similar complaints, as the Plaintiff here has done, can be sufficient. Groark 2013 WL 6199187, at *6 (citing Katzenmoyer, 2012 WL 6691746, at *4).

[7] See Worrall v. City of Atlantic City, No. 11-3750, 2013 WL 4500583, at *4 (D.N.J. Aug. 20, 2013) ("Indeed, relevant Third Circuit precedent indicates multiple complaints against just one officer may suffice to establish a custom.").

[8] Plaintiff also points to a complaint made by another police officer against Officer Sydnor for aggravated sexual assault. As the circumstances surrounding that incident are dissimilar to the allegations here, the Court does not consider that complaint.

13

details regarding [the incident in question] or the incidents reflected in the Use of Force Reports"). None of these complaints, however, were sustained. (Ex. L to Pl.'s Br. Opp. AC.) Chief Mooney reviewed many of the investigative reports involving Officer Sydnor before forwarding them to the prosecutor's office. (See Ex. M to Pl.'s Br. Opp. AC at RR IA220, 765, 1041.) In addition, Chief Mooney received annual Early Warning System memoranda reporting which officers received three or more IA complaints during a calendar year. (Ex. O. to Pl.'s Br. Opp. AC.) Several of these reports cited Officer Sydnor. (Id.)[9] As in Beck, a reasonable jury could infer from the narrow time period and similar allegations "that the Chief of Police knew, or should have known, of [Officer Sydnor's] propensity for violence when making arrests." Beck, 89 F.3d at 973; Garcia v. City of Newark, No. 08-1725, 2011 WL 689616, at *4 (D.N.J. Feb. 16, 2011) (denying summary judgment for police department based on evidence of written civilian complaints against individual defendant police officers).

---

[9] The Early Warning System reviews all IA complaints made against an officer, not just excessive force complaints. (Ex. O to Pl.'s Br. Opp. AC.) As such, Sydnor triggered the Early Warning System review for IA complaints that did not involve the use of excessive force. Also of note, while Mooney testified that, at some point, he thought the reports were issued quarterly (Ex. E ("Mooney Dep.") to Pl.'s Br. Opp. AC at 51:24-54:10), the reports in the record indicate the system tracked complaints filed in a calendar year. (Ex. O to Pl.'s Br. Opp. AC.)

Additionally, Plaintiff presented evidence from which a reasonable jury could infer that the IA investigation process is designed to insulate the accused officers from penalty. Captain Timothy J. Friel, a former IA investigator, admitted that it is not "regular practice" for investigators to review an officer's prior and subsequent history when evaluating civilian complaints, despite the Attorney General ("AG") guidelines. (Ex. G ("Friel Dep.") to Pl.'s Br. Opp. AC at 19:11-20:16); see Beck 89 F.3d at 973 (finding issue of fact as to the sufficiency of investigations when complaints were "insulated from other prior and similar complaints and treated in a vacuum"). A review of the IA investigation reports supports Friel's testimony. Furthermore, these reports reflect that the complainant was not always interviewed, officers were asked only to provide written statements (which appear to be copied verbatim from their police reports), and officer statements seem to be given much greater weight than civilian statements. (Ex. M to Pl.'s Br. Opp. AC.)[10] From this evidence, a reasonable jury could find that the IA investigations were insufficient or inadequate and that Atlantic City exhibited deliberate indifference to the risk that its

---

[10] In the sampling of investigation reports, a complainant who used a phone to take pictures of the events was described as "idiotic" for doing so. (Ex. M to Pl.'s Br. Opp. AC at RR IA764-22.) Another complainant was discredited in part for stating he was struck in the head while the medical reports indicated an injury to his eye. (Id. at RR IA1040-4.)

officers would use excessive force in a manner similar to that alleged here. Merman, 824 F. Supp. 2d at 592 (finding a genuine issue of fact regarding the sufficiency of IA investigations pursuant to Beck); Monaco v. City of Camden, No. 04-2406, 2008 WL 408423, at *14 (D.N.J. Feb. 13, 2008) (finding IA investigations were suspect due to reliance only on written statements and conclusions of "not sustained" rather than following up on indeterminate information). Moreover, "[t]he evidence presented is sufficient to establish that Atlantic City was the 'moving force' behind Plaintiff's injuries due to its failure to act despite prior notice." Worrall, 2013 WL 4500583, at *5.

Atlantic City's attempts to distinguish this case from Beck and its progeny are unpersuasive. Atlantic City first argues that "Plaintiff's involvement with law enforcement was a result of his intoxication and aggressive behavior" and therefore any purported custom cannot as a matter of law be the proximate cause of Plaintiff's injury. (Atlantic City's Brief ("AC's Br."), Dkt. Ent. 49, at 15.) This position—for which Atlantic City cites no authority—is without merit at this stage of the proceedings. Although a jury may readily find that Plaintiff's conduct was the proximate cause of his injuries and not a policy or custom of Atlantic City, that is a question for the jury as discussed herein.

Atlantic City next argues that there is no evidence that any written IA policies were violated. Even if this were a prerequisite,[11] Plaintiff has pointed to sufficient evidence from which a juror could infer the IA process was inadequate. For instance, the AG Guidelines require review of an employee's complaint history each time a new complaint is made, but Captain Friel testified that the department was not following that guideline "on a regular basis." (Friel Dep. at 20:9-16.)

Finally, Atlantic City argues that Plaintiff's failure to provide an expert report on police procedure or statistical analysis of IA complaints is fatal to his claims. However, while expert testimony can be required in some cases, the issues presented here are not beyond the ken of an average juror "to assess what a reasonable municipal policymaker would have done with the information in this case". Worrall, 2013 WL 4500583, at *5 n.4 (citing Beck, 89 F.3d at 975-76).

Plaintiff also asserts a failure to train claim. A municipality can be liable in limited circumstances for failing to train employees. City of Canton v. Harris, 489 U.S. 378, 388 (1989). The failure to train must amount to "deliberate

---

[11] See St. Louis v. Praprotnik, 485 U.S. 112, 130-31 (1988) (discussing that a persistent custom can exist even if it is contrary to other regulations); see also Merman, 824 F. Supp. 2d at 592 (evidence that IA investigation insulated officers from liability was enough to defeat summary judgment without evidence of written policy violations).

indifference to the rights of persons with whom those employees will come into contact." Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011). Deliberate indifference requires that the defendant was on notice that, absent additional specific training, it was highly predictable that the individual offices would use excessive force. Troso v. City of Atlantic City, No. 10-1566, 2013 WL 1314738, at *9 (D.N.J. March 28, 2013) (internal quotations omitted). This can be demonstrated through a pattern of similar violations that would establish that the "policy of inaction was the functional equivalent of a decision [by the municipality] to violate the Constitution." May v. Sanna, No. 09-3253, 2012 WL 1067686, at *12 (D.N.J. March 29, 2012) (quoting Connick, 131 S.Ct. at 1365).

As discussed above, there is a pattern of complaints against Sydnor alleging similar misconduct in similar circumstances, as well as a high number of excessive force complaints against the Department as a whole. Mooney stated that he was in charge of all IA investigations, was in charge of setting IA procedures, and signed off on a number of the reports including many reports involving Officer Sydnor. (Mooney Dep. at 12:17-13:19, 32:5-24, 63:10-20.) Yet, despite the number of excessive force complaints asserted against Sydnor, he testified that no one from the Police Department has spoken to him about the complaints, suggested additional training, or sent him for

re-training. (Ex. P ("Sydnor Dep.") to Pl. Br. Opp. AC at 88:12-89:2.) From this evidence, it is reasonable to infer that Atlantic City was on notice that without additional training, it was highly predictable that officers would continue to use excessive force. See Troso, 2013 WL 1314738, at *9 n.10.

For these reasons, Defendants' motion for summary judgment on Plaintiff's Monell claims will be denied.

2. Prospective Relief

In addition to seeking damages, Plaintiff also seeks prospective injunctive relief against Atlantic City and its officers. He has styled this request as a separate count of the Complaint. Atlantic City has moved for summary judgment on this separate count on grounds that it is rendered moot due to Plaintiff's failure to produce sufficient evidence in support of his Monell claim. This argument must be rejected in light of the Court's decision above.

Although the parties did not raise this argument, Plaintiff must demonstrate standing for each form of relief sought. Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 185 (2000). Equitable remedies are unavailable absent a showing of irreparable harm, which cannot be met without a showing of a real or immediate threat that the plaintiff will be wronged again. City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983).

Here, Plaintiff's claims for injunctive relief are based entirely on past harm. He has made no showing of any likelihood of harm in the future. This alleged harm lacks the "high degree of immediacy required to constitute injury in fact and provide Article III standing" for prospective relief. Pa. Prison Soc. v. Cortes, 508 F.3d 156, 166 (3d Cir. 2007) (citing Defenders of Wildlife v. Lujan, 504 U.S. 555 (1992)). Without a showing of likelihood that he himself would be harmed again by Defendants in the near future, Plaintiff is "no more entitled to an injunction that any other citizen." Lundy v. Hochberg, 91 F. Appx. 739, 743 (3d Cir. 2003). Accordingly, all claims for injunctive relief must be dismissed.[12] See Blakeney v. Marsico, 340 F. App'x 778 (3d Cir. 2009) (affirming District Court's sua sponte dismissal of complaint for lack of Article III standing for prospective injunctive relief); Pa. Prison Soc., 508 F.3d at 169 (remanding for determination of standing for injunctive relief because issue was not raised below).

## V.   CLAIMS AGAINST MOONEY

Defendant Mooney also moves for summary judgment on Count Five, which seeks to hold Mooney liable for implementing a policy, practice or custom of tolerating excessive force by the police officers and, inter alia, implementing and/or conducting

---

[12] Additionally, the alleged injury will not go uncompensated, as there is an adequate remedy at law in the form of damages. See Lyons, 461 U.S. at 111.

superficial and shallow IA processes, failing to employ corrective or disciplinary measures despite knowledge of officer misconduct, and otherwise failing to train, supervise, control and discipline officers. (Compl. at Count Five.) Defendant Mooney first argues that it is entirely unclear from the Complaint whether Plaintiff is asserting official or individual capacity claims against him. He further contends that the claims should be treated only as official capacity claims because they are based upon allegations of "policy making conduct which can only be described as occurring in Chief Mooney's official capacity." (Mooney's Br., Dkt. Ent. 49, at 11). But this is not the correct standard. See Cincerella v. Egg Harbor Twp. Police Dep't, No. 06-1183, 2009 WL 792489, at *12 n.4 (D.N.J. March 23, 2009). It has long been recognized that State officials may be sued in their individual capacity for their official conduct. See, e.g., Hafer v. Melo, 502 U.S. 21, 25 (1991). The cause of action as alleged is identical to the Monell claim against Atlantic City. (Compl. at Count Five). In fact, in response to Defendant's arguments, Plaintiff states only that there is sufficient evidence "to visit Monell liability on Defendants Atlantic City and Chief of Police Mooney" and provides no clarification as to the nature of his claims.[13] (Pl.'s Br. Opp.

---

[13] The Court also notes that Defendant Mooney failed to submit a reply in support of his motion for summary judgment.

AC at 21.) Looking to the Complaint, however, Plaintiff alleges that "[a]ll Defendants are named in their individual and official capacities." (See Compl. at 5, ¶ 16.) As such, the Court will address both types of claims.

1. Official Capacity Claims

To the extent that Plaintiff brings suit against Defendant Mooney in his official capacity as the Chief of Police, summary judgment must be granted and the claims dismissed. In addressing the distinction between official capacity and individual capacity suits, the Supreme Court explained that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." See Hafer, 502 U.S. at 25. A suit against the Chief of Police in his official capacity is really a claim against the police department and, in turn, the municipality. A municipal department and the municipality itself are not deemed separate legal entities under the law, and therefore cannot both be named as parties to an action. See, e.g., Bonenburger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997); Adams v. City of Camden, No. 98-5186, 2006 WL 42236, at *7 n.4 (D.N.J. Jan. 6, 2006) ("...police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."). For this reason, courts have held

22

that an officer sued in an official capacity cannot be a named party in an action asserting identical claims against the municipality. See, e.g., Duran v. Warner, No. 07-5994, 2013 WL 4483518, at *6 (D.N.J. Aug. 20, 2013) (dismissing official capacity claims against Chief of Police where identical claims were asserted against the municipality); Owens v. City of Atlantic City, No. 05-3132, 2008 U.S. Dist. LEXIS 47584, at *39-40 (D.N.J. June 6, 2008) (same).

Because Plaintiff asserts identical § 1983 claims against Atlantic City, summary judgment is appropriate as to any official-capacity claims against Defendant Mooney.

2. Individual Capacity Claims

It is clear that "'[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.'" Cruz v. Cnty. of Bergen, No. 10-3322, 2011 WL 1211396, at *2 (D.N.J. March 29, 2011) (citation omitted). Rather, a government official may only be liable for his own misconduct. Id. Thus, a supervisor may be liable in his individual capacity if (1) as a policymaker, he "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm," A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr., 372 F. 3d 572, 586 (3d Cir. 2004) (quoting Stoneking v. Bradford Area Sch. Dist., 882

23

F.2d 720, 725 (3d Cir. 1989)), or (2) he "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190–91 (3d Cir. 1995)). Moreover, to impose liability under the knowledge and acquiescence theory, there must be "both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's assertion could be found to have communicated a message of approval to the offending subordinate." Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986); Moriarty v. de LaSalle, No. 12–3013 (RMB), 2012 WL 5199211, at *5, *6 (D.N.J. Oct. 19, 2012). "Particularly after Iqbal, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." Dare v. Twp. of Hamilton, No. 13–1636, 2013 WL 6080440, at *7 (D.N.J. Nov. 18, 2013) (quoting Santiago v. Warminster Twp., 629 F.3d 121, 127 n.5 (3d Cir. 2010)).

Plaintiff appears to argue that Mooney should be held individually liable under a similar theory as Atlantic City for Mooney's role as a policymaker. Defendant, on the other hand,

suggests that Mooney cannot be held liable as a policymaker because "[p]ursuant to N.J.S.A. § 40A:14-118, at all times Chief Mooney was directly responsible and answered to the 'appropriate authority' for the day to day operations of the police department and his operation thereof was made pursuant to policies established by the 'appropriate authority.'" (Mooney's Br. at 18.) However, Defendant Mooney testified that he oversaw and was responsible for IA investigations, received early warning reports of repeated IA complaints, and, as Chief of Police, had the authority to create policies addressing the procedures applicable to IA investigations. (Mooney Dep. at 12:17-22, 54:21-56:16, 31:23-32:24, 63:6-20.) In addition, Mooney clearly had knowledge of the number of excessive force complaints against Officer Sydnor as he reviewed several reports before he forwarded them to the prosecutor's office. (See Ex. M to Pl.'s Br. Opp. AC at RR IA220, 765, 1041) As discussed above, a juror could find the evidence sufficient to show that the IA investigative process was designed to shield officers from liability and therefore created an atmosphere in which the use of excessive force was tolerated, and knowledge as to the number of complaints could permit an inference of deliberate indifference. Thus, the evidence presents a question of fact as to whether or not Defendant Mooney can be held liable as a

policymaker for the police department's purported custom of tacitly approving the use of excessive force.

In addition, "[a] supervising authority may be liable under § 1983 for failing to train police officers when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact." Gilles v. Davis, 427 F.3d 197, 207 n. 7 (3d Cir.2005) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). A plaintiff must (1) identify failures to provide specific training that have a causal nexus to the alleged injury; and (2) demonstrate that the absence of this training can reasonably be said to reflect deliberate indifference to whether constitutional deprivations occur. Blacknail v. Citarella, 168 F. App'x 489, 492 (3d Cir. 2006).

As discussed above, Mooney was ultimately responsible for IA investigations and personally reviewed and approved many of the IA reports in the record. As such, he had actual knowledge of the number of excessive force complaints, those against Sydnor in particular. The number of complaints was never discussed with Sydnor nor was additional training on the use of force suggested. From this, it is reasonable to conclude that Mooney knew of training deficiencies in the use of force and was deliberately indifferent as to whether any constitutional

26

deprivations continued to occur. Thus, summary judgment will be denied.

Defendant also argues that even if Plaintiff has stated a claim against Defendant Mooney in his individual capacity, Defendant is entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223 (2009) (internal quotations omitted).

> "The Supreme Court has established a two-part analysis that governs whether a government official is entitled to qualified immunity. . . . The first question in the Saucier analysis asks whether the official's conduct violated a constitutional or federal right. . . . The second question asks whether the right at issue was "clearly established." . . . To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."

> Ray v. Twp. of Warren, 626 F.3d 170, 173-74 (3d Cir. 2010)

(citations omitted). Defendant cites several dated cases, which he contends "stand for the proposition that, under the context of police action, an official's mere inaction in the face of subordinate officers [sic] unconstitutional actions clearly does not suffice to render the official individually liable." (Mooney's Br. at 20 (citing inter alia Rizzo v. Goode, 423 U.S. 362 (1976)).) It is unclear to this Court how these cases would

support a finding of qualified immunity here. To the extent that Defendant wishes to proceed on such a theory, he shall submit supplemental briefing on this issue within thirty (30) days of this Opinion.

## VI. <u>CLAIMS AGAINST HARRAH'S AND WATFORD</u>

Defendants Harrah's and Watford move for summary judgment on claims for assault and battery (Count Seven), negligent infliction of emotional distress (Count Eight),[14] negligent hiring, training, and supervision (Count Nine), and agency (Count Ten). Plaintiff failed to respond to Defendants' arguments regarding negligent infliction of emotional distress or negligent hiring. As such, the Court will grant summary judgment as unopposed as to those claims. The remaining counts are addressed in turn.

1. <u>Negligent Supervision and Training (Count Nine)</u>

To defeat summary judgment of a negligent supervision claim, a plaintiff must present evidence to support three

---

[14] Plaintiff has titled this Count "negligent/intentional infliction of emotional distress." (Compl. at Count Eight.) Defendants, however, appear to have interpreted this as asserting only a negligent infliction of emotional distress claim, which Plaintiff does not contest. In any event, the record does not appear to support an intentional infliction of emotional distress claim. <u>See</u> <u>Taylor v. Metzger</u>, 706 A.2d 685, 703 (N.J. 1998) (discussing elements of an intentional infliction of emotional distress claim and requiring conduct to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community").

fundamental requirements. First, the employer must have known or had reason to know that the employee exhibited dangerous characteristics. Carmichael v. Carmichael, No. 13-2409, 2014 WL 347804, at *4 (D.N.J. Jan. 31, 2014) (citing Smith v. Harrah's Casino Resort of Atlantic City, No. L-0827-11, 2013 WL 6508406, at *3 (N.J. Super. Ct. App. Div. Dec. 13, 2013)). Second, there must be a reasonable foreseeability of harm to others. Brijall v. Harrah's Atlantic City, 905 F. Supp. 2d 617, 620 (D.N.J. 2012). Third, the negligent supervision must be the proximate cause of the alleged injury. Id.

In addition, liability can be imposed on an employer who fails to properly train its employees. Tobia v. Cooper Hosp. Univ. Med. Ctr., 643 A.2d 1, 6 (N.J. 1994). Rooted in negligence, it is a separate and distinct claim from respondeat superior and covers acts outside the scope of employment. Hoag v. Brown, 935 A.2d 1218, 1230 (N.J. Super. Ct. App. Div. 2007). A plaintiff must demonstrate that (1) an employer had a duty to train its employees; (2) the employer failed to properly train its employees; and, (3) this failure was the proximate cause of the injury. Stoby v. Egg Harbor Twp., 754 F. Supp. 2d 716, 721 (D.N.J. 2010).

Here, Plaintiff has produced no evidence beyond the incident in question to support a theory of negligent supervision. That Harrah's employees were violent on this date,

however is not sufficient to show that Harrah's knew or should have known of any "unfitness or dangerous characteristics" prior to this incident. <u>See</u> <u>Di Cosala v. Kay</u>, 450 A.2d 508, 516 (N.J. 1982). Plaintiff has provided no criminal histories, personnel files, employment records, or other evidence to support this claim. Plaintiff points only to one prior incident that involved only one of the Harrah's employees named herein (Rivera), which led to a separate lawsuit filed by a different plaintiff. This one other action, which has since been sent to mediation and dismissed, is insufficient to show knowledge of violent propensities of these employees. Absent any facts in the record that indicate Harrah's knew or should have known about any violent proclivities of the employees involved in the March 29, 2009 incident, summary judgment must be granted on the negligent supervision claim.

Similarly, with respect to the negligent training claim, Plaintiff has provided no evidence of training insufficiencies or established a causal link between the training and his injuries. Harrah's has provided evidence of its training program which teaches the use of defensive techniques and testimony which supports that all officers underwent this training program. (Exs. E & F to Harrah's Br.) Plaintiff points only to the security footage of the March 29, 2009 incident, which he alleges shows Harrah's employees using excessive force contrary

30

to Harrah's training manuals. In the absence of any additional evidence such as expert testimony on the inadequacy of Harrah's training programs or causation, this incident cannot sustain a claim of negligent training. See Brijall, 905 F. Supp. 2d at 621 (noting a lack of expert testimony and stating video surveillance, without more, cannot sustain claim for negligent training or supervision). As such, summary judgment will be granted.

  2. Assault and Battery Against Watford (Count Seven)

  Under New Jersey law, a person is subject to liability for battery if "he acts intending to cause a harmful or offensive contact . . . or an imminent apprehension of such contact' and a 'harmful' or 'offensive' contact 'directly or indirectly' results." Russo v. Ryerson, No. 01-4458, 2006 WL 477006, at *36 (D.N.J. Feb. 28, 2006) (quoting Restatement (Second) of Torts §§ 13, 18 (1965)). An assault can occur in the absence of actual contact if the victim is placed in imminent apprehension of harmful contact. Id. (citing Restatement (Second) of Torts § 21 (1965)). Self-defense and defense of others are affirmative defenses that can shield a defendant from liability if proven. See N.J. Model Civil Jury Charge § 3.10 (1984).

  Both parties acknowledge that Harrah's security officers did in fact restrain Plaintiff and the video surveillance bears this out. (Ex. H to Harrah's Br., Dkt. Ent. 52.) Harrah's and

31

Watford argue that this contact was justified both in self-
defense and for the defense of other Harrah's patrons because
Plaintiff was agitated and unruly. Plaintiff maintains this
force was unnecessary and relies heavily on the security
surveillance footage. While the video surveillance is not as
favorable to Plaintiff as he portrays, whether or not the
employees were justified in restraining Plaintiff in the manner
in which they did presents a factual issue to be resolved by the
jury.[15]

Watford also argues there is insufficient evidence to show
his involvement in the alleged assault and battery, but he is
mentioned by name in Harrah's Incident Report as being forced to
restrain Plaintiff. (See, e.g., Ex. D ("Incident Report") to
Harrah's Br.) Therefore, viewing the facts in a light most
favorable to Plaintiff, there is an issue of fact as to
Watford's involvement.

   3. Agency Against Harrah's (Count Ten)

Plaintiff seeks to hold Harrah's liable for the alleged
assault and battery by its employees. An employer is liable
under a theory of respondeat superior for torts committed by
employees within the scope of their employment. New Jersey

_____

[15] Furthermore, courts have recognized that a casino may exclude
disorderly patrons from its premises. Simone v. Golden Nugget
Hotel & Casino, 844 F.2d 1031, 1035 (3d Cir. 1988) (quoting
Uston v. Resorts Int'l Hotel, Inc., 445 A.2d 370, 375 (N.J.
1982)).

courts consider four factors in determining whether an employee's conduct is within the scope of his employment: (1) whether the act is of a kind the employee is employed to perform; (2) whether the act occurs substantially within the authorized time limits; (3) whether the act is actuated, at least in part, by a purpose to serve the master; and (4) if force is intentionally used by the servant against another, whether the use of force is not "unexpectable" by the master. Davis v. Devereux Found., 37 A.3d 469, 489-90 (N.J. 2012) (citing Restatement (Second) of Agency § 228 (1958)). Moreover, while intentional torts generally fall outside the scope of employment, courts have found employees' acts to "be within the scope of their employment when their attempts to enforce their employer's rules instigated violence." Brijall, 905 F. Supp. 2d at 622. Thus, when an employee's responsibilities include the enforcement of the employer's rules, the conduct is generally attributable, in whole or in part, to the employee's attempt to serve the employer. Davis, 37 A.3d at 469.

Here, Harrah's argues that if its security personnel committed an assault and battery, the employees must have been acting outside the scope of their employment because they were authorized only to use appropriate defensive techniques in carrying out their duties. However, even if the alleged level of force was strictly unauthorized by Harrah's policies, these

employees were responsible for the enforcement of the employer's rules and the removal of unruly patrons. Brijall, 905 F. Supp. 2d at 623 (genuine issue of fact remained as to whether casino security officer was within scope of employment in committing battery). The employees' attempts to perform these duties seem to have prompted the altercation. Id. Therefore, "the fight 'was certainly related to' [the security officers'] employment and a jury question is presented as to whether the act was within the scope of [the security officers'] employment." Id.; Schisano v. Brickseal Refactory Co., 162 A.2d 904 (N.J. Super. Ct. 1960) (finding issue of fact as to whether a battery committed by the employee during a parking dispute with a customer was within the scope of employment where employee was responsible for keeping unauthorized cars out of the lot). Accordingly, Harrah's motion for summary judgment on Count Ten must be denied.

## VI. CONCLUSION

For the reasons outlined above, summary judgment will be GRANTED as to Counts Three, Four, Six, Eight, and Nine in their entirety, and DENIED as to Counts Five and Ten. In addition, summary judgment is GRANTED as unopposed with respect to the Count Seven claims against Defendants Sydnor and Clark but DENIED with respect to the Count Seven claim against Defendant Watford. All fictitious parties are hereby DISMISSED. An appropriate order will be issued herewith.

Date: <u>March 19, 2014</u>

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE