NOT FOR PUBLICATION [Dkt. Ent. 73]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| JASON CORDIAL,<br><br>    Plaintiff,<br><br>v.<br><br>ATLANTIC CITY, et al.,<br><br>    Defendants. | Civil No. 1:11-cv-01457 (RMB/AMD)<br><br>**OPINION** |

Appearances

Thomas J. Mallon
86 Court Street
Freehold, NJ 07728
    Attorney for Plaintiff Jason Cordial

Michael E. Riley
Law Offices of Riley & Riley
The Washington House
100 High Street, Suite 302
Mount Holly, NJ 08060
    Attorney for Defendants Atlantic City, Franco Sydnor, &
    Michelle Clark

Patrick J. Wolf
Sharleen E. Pratt
Zarwin, Baum, DeVito, Kaplan, Schaer & Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 19103
    Attorneys for Defendant John J. Mooney III

Cristopher C. Mauro
Camacho Mauro Mulholland, LLP
20 Nassau Street, Suite 308
Princeton, NJ 08542
    Attorney for Defendants Harrah's Atlantic City Propco, LLC,
    d/b/a Harrah's Resort Atlantic City & Kolongi Watford

1

**Bumb**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon a motion for reconsideration filed by Defendant Chief of Police John J. Mooney III ("Mooney"), requesting that the Court reconsider its partial denial of Mooney's Motion for Summary Judgment.

**PROCEDURAL HISTORY**

On March 15, 2011, Plaintiff Jason Cordial ("Plaintiff") filed a complaint alleging claims pursuant to 42 U.S.C. § 1983 against several defendants.[1] In relevant part, the Complaint alleged that Mooney, as Chief of Police, was responsible for promulgating an unlawful custom, policy, or practice of conducting superficial Internal Affairs investigations into civilian complaints, which created an atmosphere of tolerance of police misconduct. (See Dkt. Ent. 1 ("Compl.") at 9; Dkt. Ent. 54 ("Pl.'s Br.") at 19-20.) On August 23, 2013, Mooney filed a Motion for Summary Judgment on all claims against him. (Dkt. Ent. 49.) Thereafter, on March 19, 2014, this Court entered an Opinion and Order denying Mooney's motion in part and granting it in part. (Dkt. Ents. 68, 69.) Specifically, the Court granted summary judgment as to all claims against Mooney in his official capacity, but denied summary judgment as to the individual capacity claims based on unlawful custom, practice, or policy

---

[1] For a complete overview of the facts underlying this litigation, see Cordial v. Atlantic City, No. 11-1457, 2014 WL 1095584, at *1-2 (D.N.J. March 19, 2014).

2

and failure to train. Cordial v. Atlantic City, No. 11-1457, 2014 WL 1095584, at *9-11 (D.N.J. March 19, 2014). On April 2, 2014, Mooney filed the instant Motion for Reconsideration. (Dkt. Ent. 73.)

**LEGAL STANDARD**

Motions for reconsideration are governed by Local Civil Rule 7.1(i) and are considered "extremely limited procedural vehicle(s)." U.S. v. Pechiney Plastics Packaging, Inc., No. 09-5692, 2012 WL 3527721, at *3 (D.N.J. Aug. 14, 2012) (quoting Resorts Int'l v. Greate Bay Hotel & Casino, Inc., 830 F. Supp. 826, 831 (D.N.J. 1992)). The purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (internal quotations omitted). A party seeking reconsideration must show at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Id. (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). Rule 7.1(i) states:

> Unless otherwise provided by statute or rule ..., a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. A brief setting forth

3

> concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion.

The Rule is clear that the Court need not look to matters which were not originally presented, only those that may have been "overlooked." See Florham Park Chevron, Inc. v. Cheron U.S.A., Inc., 680 F.Supp. 159, 162 (D.N.J. 1988). As such, "except in cases where there is a need to correct a clear error or manifest injustice, '[o]nly dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration." Pechiney, 2012 WL 3527721, at *3 (quoting Guinta v. Accenture, LLP, No. 08-3776, 2009 WL 301920, at *5 (D.N.J. Jan. 23, 2009)).

**ANALYSIS**

Mooney argues that reconsideration is necessary to correct the Court's clear error of law or fact and to prevent manifest injustice. (Dkt. Ent. 73 ("Mooney's Br.") at 3.) Specifically, Mooney argues: (1) Plaintiff's Complaint fails to state a claim against him; (2) as a matter of law, Mooney cannot be deemed a policymaker; (3) the legal precedent relied upon by the Court is questionable in light of Ashcroft v. Iqbal, 556 U.S. 662 (2009); and (4) even if he can be held liable, he is entitled to qualified immunity. The Court will address each point in turn.

4

A.   <u>Plaintiff's Complaint Fails to Allege a Claim</u>

The claims for relief in the Complaint as to Mooney are 1) promulgation of unlawful policy, practice, or custom; and 2) failure to train. Mooney asserts that the Court, in deciding the motion for summary judgment, overlooked the deficient factual allegations in the Complaint itself, stating "[a]s a preliminary matter, Plaintiff's Complaint does not allege sufficient facts against Mooney to support the apparent <u>Monell</u> supervisor claim against him . . . ." (Mooney's Br. at 4.) Mooney further states that the Complaint does not allege that Mooney was the final policymaker for the City, which makes the claim against him deficient. (<u>Id.</u>)

While a lack of factual allegations in the complaint may be an issue on a motion to dismiss, which Mooney did not file, a court deciding a motion for summary judgment looks beyond the pleadings to the entire record for factual support for a plaintiff's claims. <u>See</u> <u>Fed. R. Civ. P. 56(c)</u> (a party asserting a fact is disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . ."). As discussed in the initial Opinion, the record as a whole contains sufficient evidence to sustain the claims against Mooney. <u>See</u>

5

Cordial, 2014 WL 1095584, at *5-6, 10-11. Accordingly, this argument does not provide a basis for reconsideration of the Court's initial decision.

B.  Mooney Was Not a Policymaker

Mooney also moves for reconsideration on the basis that, as a matter of law, he cannot be deemed a policymaker for Atlantic City. To be considered a policymaker for purposes of § 1983, the official must have final discretion to make a decision or take an action. Andrews v. Philadelphia, 895 F.2d 1649, 1481 (3d Cir. 1990). This is determined by looking to state law. St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988). The official does not need complete municipal policymaking authority, only final discretion as to the action or decision in question. See Andrews, 895 F.2d at 1481 (finding police commissioner was a policymaker as he promulgated and disseminated training manuals regarding harassment, established a division to manage discrimination issues, and reviewed the relevant Internal Affairs report); Santiago v. Vineland, 107 F. Supp. 2d 512, 540 (D.N.J. 2000) (examining whether police chief had final authority to hire and fire in case challenging discriminatory hiring practices).

In support of his argument, Mooney once again refers the Court to N.J. Stat. Ann. § 40A:14-118, which governs the establishment of a municipal police force. In pertinent part, the statute reads:

6

> Any such ordinance, or rules and regulations, shall provide that the chief of police, if such position is established, shall be the head of the police force and that <u>he shall be directly responsible to the appropriate authority</u> for the efficiency and routine day to day operations thereof . . .
>
> As used in this section, "<u>appropriate authority</u>" <u>means the mayor, manager, or such other appropriate executive or administrative officer, such as a full-time director of public safety, or the governing body or any designated committee or member thereof, or any municipal board or commission established by ordinance for such purposes</u> . . .

N.J. Stat. Ann. § 40A:14-118 (West 1981) (emphasis added). Because the statute provides that the chief of police is "directly responsible to the appropriate authority," Mooney argues that he does not have final decision-making authority and therefore cannot be a policymaker. Plaintiff's reading of this language is too narrow.

While Mooney states that the statute could not more clearly establish that Mooney is not the final authority, federal courts have disagreed. See <u>Hernandez v. Borough of Palisades Park Pol. Dept.</u>, 58 F. App'x 909, 913 (3d Cir. 2003) ("In this case, both New Jersey statutes [N.J. Stat. Ann. § 40A:14-118] and the Borough's own Police Manual establish that the Chief of Police was the relevant policymaker."); <u>Merman v. Camden</u>, 824 F.Supp. 2d 581, 596 n.30 (D.N.J. 2010) ("the Court agrees that a reasonable fact-finder could conclude that the Chief of Police

7

[as municipal decision maker] knew or should have known of the inadequate investigations . . . ."); see also Figueroa v. Camden, No. 09-4343, 2012 U.S. Dist. LEXIS 121963, at *30-33 (D.N.J. Aug. 28, 2012) (finding that "the record contains at least a dispute of fact over whether Defendant [police commissioner] had primary responsibility for training and discipline" where defendant was appointed by Camden County Prosecutor's Office to manage police department pursuant to contract); Holloway v. Whaley, No. 86-3710, 1989 WL 22365, at *4 (D.N.J. Feb. 15, 1989) ("Both the Mayor and Police Chief of Freehold are 'policymakers' to the extent that they have the statutory authority to propose borough policies and to administer certain rules and regulations." (citing N.J. Stat. Ann. § 40A:14-118)). Indeed, the statute seems to leave open the exact contours of the police chief's decision-making authority. Here, Mooney testified that he was responsible for Internal Affairs ("IA") investigations and had the authority to create policies addressing procedures of these investigations. (Ex. E ("Mooney Dep.")to Pl.'s Br. Opp. AC, at 12:17-22, 54:21-56:16, 31:23-32:24, 63:6-20.) Specifically, he testified that as Chief of Police he issued, and was "ultimately responsible" for issuing, "departmental general order[s] regarding Internal Affairs function." (Id. at 32:5-24, 32:15-18.) Additionally, Mooney also had "the authority to make changes with respect to the procedure to be followed"

8

regarding Internal Affairs investigations. (Id. at 63:16-18.) As such, the Court finds that the record contains sufficient evidence demonstrating that Mooney was a policymaker for purposes of Plaintiff's claims.[2]

C. Supervisory Liability Post-Iqbal

Mooney argues that Third Circuit precedent relied upon by the Court in its denial of summary judgment has been called into question after Ashcroft v. Iqbal, 566 U.S. 662 (2009). In Iqbal, the Court stated, "[r]espondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution. We reject this argument." Iqbal, 556 U.S. at 667. Mooney is correct that the Third Circuit has acknowledged that this language constitutes a potential alteration of the standard for supervisory liability. See, e.g., Santiago v. Warminster Twp., 629 F.3d 121, 130 n.8 (3d Cir. 2010) (noting the possible effect of Iqbal but

---

[2] Defendant also contends that the determination of whether Mooney is a policymaker is a question of law, not a question of fact as Defendant understood the Court to be indicating in its Opinion. See City of St. Louis v. Praprotnik, 485 U.S. 112, 124 (1988) (the Supreme Court held that "the identification of policymaking officials is not a question of federal law, and it is not a question of fact in the usual sense"); Santiago v. Warminster, 629 F.3d 121, 135 (3d Cir. 2010) ("[W]hether Chief Murphy is a final policymaker is ultimately a legal rather than a factual question . . . ."). But, here, the Court found that as a matter of law, Chief Mooney is a policymaker and the record contains sufficient evidence to hold him liable as such. It is now up to the jury to determine liability.

ultimately dismissing case under the "existing supervisory liability test"). To date, however, the Third Circuit has not directly addressed the continued viability of its tests for supervisory liability in the wake of Iqbal. Id. Accordingly, district courts within the Third Circuit have continued to apply the traditional supervisory liability standard in this Circuit, as this Court did in the instant matter. See Campbell v. Gibb, No. 10-6584, 2012 WL 603204, at *10, n.6 (D.N.J. Feb. 21, 2012) (continuing to apply Third Circuit's traditional supervisory liability analysis); Young v. Beard, No. 07-2266, 2009 WL 3111736, at *2 (E.D. Pa. Sept. 23, 2009) (reversing magistrate judge's recommendation to adopt new supervisory liability standard in light of Iqbal). Thus, the Court will not reconsider its decision on this ground.

D.  Qualified Immunity

Mooney also moves for reconsideration because he is entitled to qualified immunity from suit. In its opinion, the Court permitted Mooney to file supplemental briefing on the qualified immunity issue to clarify his arguments. Cordial, 2014 WL 1095584, at *11. As such, while Mooney's motion could be viewed as raising new arguments not explicitly addressed in his motion for summary judgment, the Court will consider them here.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223 (2009) (internal quotations omitted). The first question in the qualified immunity analysis is whether the official's conduct violated a constitutional or federal right. Ray v. Twp. of Warren, 626 F.3d 170, 174 (3d Cir. 2010). The second question is whether the right was clearly established. Id. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). The underlying right at issue here is Plaintiff's Fourth Amendment's right to be free from the use of excessive force during an arrest, which was clearly established at the time. May v. Sanna, No. 09-3253, 2012 WL 1067686, at *8 (D.N.J. March 29, 2012) (regarding the use of excessive force during an arrest, "[t]his is not a case where the law was in controversy at the relevant time.").

Mooney argues that the right was not clearly established because the case law was "far from settled that a supervisor or 'policymaker'. . . may be liable to the same extent and under the same standards as against the municipality, based on a mere failure to act." (Mooney's Br. at 19.) This argument does not directly address qualified immunity, as "it is [Plaintiff's]

11

right that must be clearly established (or shown not to be clearly established by the Supervisor Defendants), not the standard to impose supervisory liability." <u>Rosenburg v. Vangelo</u>, 93 F. App'x 373, 378 (3d Cir. 2004). Mooney has pointed to no authority that suggests Plaintiff's right to be free from excessive force in an arrest was not clearly established.

Along the same lines, Mooney contends that he acted reasonably because a reasonable person in his position would not have known that his conduct was violating a clearly established right. To the extent Mooney argues he was not on notice of his potential liability individually, the deliberate indifference standard of liability for municipal supervisors was well established at the time of the incident. <u>See</u> <u>id.</u> at 379 (concluding "the deliberate indifference standard had been clearly established prior to 1999 and no reasonable official could claim a higher showing would be required to establish supervisory liability"); <u>Sample v. Diecks</u>, 885 F.2d 1099, 1117-18 (3d Cir. 1989) (applying deliberate indifference standard to individual municipal supervisors because "we are confident that, absent official immunity, the standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve"); <u>Figueroa</u>, 2012 WL 3756974, at *11 (rejecting chief of police's argument of "a reasonable supervisor in

12

Defendant's position would not have believed that he was being deliberately indifferent to the risk of the Defendant Officers' use of excessive force" as basis for qualified immunity).[3]

Additionally, the Court stated in its opinion that there was sufficient evidence to present a genuine issue of fact as to whether Mooney was deliberately indifferent to the constitutional rights of citizens. In terms of supervisory liability, this issue of fact precludes Mooney's assertion of qualified immunity because being deliberately indifferent to constitutional rights cannot be objectively reasonable. Beers-Capitol v. Whetzel, 256 F.3d 120, 142 n.15 (3d Cir. 2001) ("[b]ecause there is a genuine issue of fact as to whether [the defendant] was deliberately indifferent, she has not carried her burden to establish that she is entitled to [qualified] immunity."); Carter v. Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999) (stating that a showing of deliberate indifference to constitutional rights would preclude qualified immunity because the conduct could not be objectively reasonable).

**CONCLUSION**

---

[3] Mooney also argues that in light of Iqbal and subsequent decisions that have called supervisory liability into question, the right was not clearly established and he should be entitled to qualified immunity. This argument is not persuasive, however, as the incident giving rise to this litigation occurred before Iqbal. Because any question of the exact contours of supervisory liability came after this incident, Mooney cannot rely upon these cases to argue the right was not clearly established in March 2009.

13

For the foregoing reasons, the Court will deny Mooney's Motion for Reconsideration. An appropriate order will follow.

Date:  June 2, 2014

                                                  s/Renée Marie Bumb
                                                  RENÉE MARIE BUMB
                                                  UNITED STATES DISTRICT JUDGE